[Civ. No. 21995.   Second Dist., Div. One.   Dec. 28, 1956.]

R. BLUE, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; MAVIS C. PEPE et al., Real Parties in Interest.

Simon Taub and William M. Sternfeld for Petitioner.

Harold W. Kennedy, County Counsel, William E. Lamoreaux, Assistant County Counsel, and Thomas H. Carver, Deputy County Counsel, for Respondent.

K. E. Nungesser for Real Parties in Interest.

NOURSE (Paul), J. pro tem.*—Petitioner seeks a writ of mandate to compel the respondent court to vacate and set aside a "purported judgment" rendered and entered by that court,

*Assigned by Chairman of Judicial Council.

and to grant petitioner's motion to appoint appraisers pursuant to sections 1245 et seq. of the Civil Code to appraise the value of certain property upon which petitioner had caused an execution to be levied and upon which Mavis Pepe (hereinafter called Mavis), real party in interest here, had filed a declaration of homestead.

The facts, insofar as they are relevant to the questions presented here, are:

On February 24, 1955, petitioner commenced an action against Raymond V. Pepe (hereinafter called Pepe), the husband of Mavis, to recover upon certain promissory notes alleged to have been executed by him. Mavis was not a party to the action. This proceeding will hereafter be called "the action."

On January 13, 1956, petitioner recovered judgment against Pepe. On March 15 of that year he caused an execution to be levied upon the subject real property, and on April 5 he filed his petition for the appointment of persons to appraise the value of said property. In this petition he alleged all of the facts required by section 1246 of the Civil Code, including the fact that on the 21st of February, 1955, Mavis had executed and caused to be recorded a declaration of homestead upon the subject real property. He further alleged that on the 28th of February, 1955, Pepe was the legal and record owner of the property; that on the 28th of February Pepe executed and caused to be recorded a conveyance purporting to terminate his interest in said property and convey the same to Mavis as her sole and separate property; that said conveyance was fraudulent as a transfer in fraud of creditors in that it rendered Pepe insolvent and was made without a fair consideration; that Pepe intended and knew that he incurred debts beyond his ability to pay the same as they matured, and that the conveyance was made with actual intent to hinder, delay, and defraud his creditors; and further alleged that pursuant to section 3439.09, subdivision 2, of the Civil Code he elected to disregard said conveyance and levy upon the subject property.

Petitioner did not cause this petition to be served upon Mavis, and upon the petition coming on to be heard the trial court continued the matter and ordered that the petition be served upon Mavis that she should have the right to answer or otherwise plead to the petition within the time limited in the order.

Thereafter Mavis filed her answer in which all the allegations of the petition made in conformity with section 1246, except the allegation as to the filing by her of the declaration of homestead, were denied. She admitted the conveyance of the subject property to her by Pepe, but denied that said transfer was fraudulent or made without fair consideration or with the intent to defraud creditors. As an affirmative defense she alleged that she was not a party to the action or a judgment debtor of petitioner; that prior to February 25, 1955, she and Pepe held title to the property in question as joint tenants with the right of survivorship, but that on said date Pepe conveyed all of his interest in said property to her, and since that time she had held it as her separate property and as her homestead, and that the homestead has never been abandoned.

Upon the answer being filed the court set the matter down for trial, and after receiving evidence made and filed written findings of fact and conclusions of law. The court found that petitioner had obtained a judgment against Pepe, and that pursuant thereto and within 60 days prior to the filing of the petition for the appointment of appraisers petitioner had caused a writ of execution to be levied upon the subject real property and that said judgment was not one of the classes of judgments enumerated in section 1241 of the Civil Code; that Mavis had filed a declaration of homestead upon the subject property; that said homestead had not been abandoned; that the allegations of the petition as to the value of said real property were true; and that no previous execution arising out of the same judgment had been levied upon said homestead. The court further found that Pepe had conveyed said real property to Mavis as set forth in the petition, and found that said conveyance was for a full, complete, and adequate consideration and was not fraudulent. The court further found that the judgment obtained by petitioner against Pepe and upon which the execution levied had issued was a default judgment and was of no effect but had been rendered upon a purported note not signed nor delivered by Pepe, and further found that Pepe had no right, title, or interest in or to the subject property.

From the foregoing facts the court concluded as a matter of law that Mavis was the owner of the real property and that petitioner had no legal or equitable right, title, or interest therein; that the execution levied upon the subject property should be quashed; and that petitioner was not entitled

to any of the remedies provided for by division 2, part 4, title 5, chapter 1, of the Civil Code. Judgment was made and entered in accordance with the court's conclusions of law.[1]

It is petitioner's contention that the court, in purporting to determine the question as to whether title had vested in Mavis and whether Pepe had any right, title, or interest to the property which was subject to sale at execution, acted in excess of its jurisdiction; that the judgment rendered was therefore void; and further that his petition for the appointment of appraisers having alleged all of the facts required by section 1246 of the Civil Code, and the court having found all of those facts to be true, there was no room for exercise of any discretion by the court but it was obligated to grant the prayer of said petitioners and appoint the appraisers. It is his further contention that the court was without power to quash the execution upon the application of Mavis, she not being a party to the action in which the execution had issued.

Division 2, part 4, title 5, chapter 1, of the Civil Code makes no provision for the trying of the question as to whether the judgment debtor is the owner of or has any interest in the real property which his judgment creditor seeks to have appraised and sold under execution pursuant to the provisions of that section, nor does it make any provision for the filing by the homestead claimant of an answer or other pleading responsive to a petition filed pursuant to sections 1246-1248 of the Civil Code. █ It has long been established that an answer or other responsive pleading is neither required nor the filing thereof proper. (*Stone* v. *McCann*, 79 Cal. 460 [21 P. 863]; *Martin* v. *Hildebrand*, 190 Cal. 369 [212 P. 618].) █ It is further established that no one except the judgment debtor may move to quash a writ of execution or the levy thereof unless the judgment upon which it is issued is, or the writ is, void on its face. (*Associated Oil Co.* v. *Mullin*, 110 Cal.App. 385, 392 [294 P. 421]; *Vest* v. *Superior Court*, 140 Cal. App.2d 91, 93 [294 P.2d 988].) █ A levy cannot be quashed on the grounds that the judgment debtor has no interest in the property levied upon (*Vest* v. *Superior Court, supra*, at p. 93; and cases there cited), and the court may not, in a pro-

---

[1]In the minutes of the trial and in the findings of fact and conclusions of law and in the judgment, Mavis is denominated ''intervenor,'' although no complaint in intervention was or could have been filed, and although she did not pray for any affirmative relief by her answer to the petition.

ceeding had pursuant to the provisions of the Civil Code above referred to, define the interest of the judgment debtor in the property levied upon, or turn the proceeding into a plenary suit in equity in the nature of a creditor's bill. (*Strangman* v. *Duke*, 140 Cal.App.2d 185, 192 [295 P.2d 12].)

In the present case petitioner, as the judgment creditor of Pepe, had the right to bring an action in the nature of a creditor's bill to set aside the conveyance from Pepe to Mavis as being a fraudulent conveyance, or he had the right, under section 3439.09, subdivision 2, of the Civil Code, to "Disregard the conveyance and attach or levy execution upon the property conveyed." The property conveyed being subject to a valid homestead it was necessary, in the prosecution of the right thus given him to file his petition under section 1246, to have the property appraised and its value determined. It is evident therefore that if his right to have the property appraised and then sold under execution may be defeated by the court, upon the proceedings for the appointment of appraisers, holding that there was no fraudulent conveyance, the provisions of section 3439.09 which we have quoted are rendered meaningless.

In an execution sale held after the appointment of receivers and the determination that the property has a value in excess of the homestead exemption, the purchaser at the execution sale will acquire only such interest as the judgment debtor had in the property; and he may if he chooses take no further steps to perfect his title and await action by anyone claiming adversely, or may himself sue to quiet title against such adverse claims. (*Strangman* v. *Duke, supra,* at pp. 191, 192.)

It is clear, therefore, that respondent court was not authorized, in the proceeding before it, to try any question of title or to make any order terminating the lien which petitioner had acquired on the subject property by quashing the execution levied thereon, and that therefore in purporting so to do it acted in excess of its jurisdiction (*Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280, 291 [109 P.2d 942, 132 A.L.R. 715]). It is further evident that, having found to be true all of the allegations of the petition which were essential under section 1246 of the Civil Code, and having found that the property had a value in excess of the homestead exemption of $12,500, the court abused its discretion in refusing to either appoint appraisers in accordance with the prayer of the petition, or in the alternative to order

a sale of the property under the execution with directions that the proceeds of the sale be applied in the manner required by section 1256 of the Civil Code. (See *Stockton Sav. & Loan Bank* v. *Mello,* 201 Cal. 194 [256 P. 202]; *Strangman* v. *Duke, supra,* at pp. 192, 193.)

Mavis asserts, however, that by his petition Blue tendered to the respondent court the issue as to the conveyance to her of the property being fraudulent, and that he is therefore estopped to now assert that the court acted in excess of its powers. ▮ It is undoubtedly true that, except where the court does not have jurisdiction of the subject-matter of an action, one who invokes the court's power and tenders an issue to be tried which ordinarily might not be tried in a proceeding of the character in which the power of the court is invoked, may be held estopped to challenge the court's power to act. (*Dobbins* v. *Economic Gas Co.,* 182 Cal. 616, 625-626 [189 P. 1073]; 15 Cal.Jur. § 198, pp. 152-153; 1 Witkin, California Procedure (1954) § 149, pp. 412-413.)

▮ A careful examination of the record before us[2] convinces us that petitioner is not estopped to now assert that the respondent court acted in excess of its jurisdiction. Petitioner did not, by his motion for the appointment of appraisers or his petition filed in support thereof, ask the court to determine whether Pepe had any interest in the property. He sought only the appointment of appraisers in order that he might sell any interest that Pepe might have in the property, and his allegations as to the fraudulent character of the conveyance by Pepe to Mavis are, on their face, only made as an explanation of his election to pursue the remedy granted him by section 3439.09 of the Civil Code. In his points and authorities filed in support of his motion, before the court had on its own motion ordered that Mavis might plead to the petition, and in his points and authorities filed with the court at the purported trial of the issues tendered by Mavis' answer, petitioner asserted his right to pursue his remedies under sections 3439 through 3439.09 of the Civil Code. It is therefore evident that neither the trial court nor Mavis was misled into believing that petitioner was submitting for trial and decision the question as to whether Pepe had any interest in the subject property. It is true that in his points and authorities peti-

[2]The entire record in the respondent court, other than the record of the oral proceedings, has been made a part of the record here by stipulation entered into at the oral argument.

tioner also submitted to the trial court authorities on the question of whether Pepe's conveyance to Mavis was a fraudulent transfer; but inasmuch as the court had, of its own motion, permitted an answer to be filed which purported to frame such an issue of fact, it was petitioner's duty to present to the court his views of the law upon that question.

Respondent maintains that a writ of mandate should not issue here because, so it asserts, the petitioner has an adequate remedy by appealing from the judgment attacked; and because, it says, a writ of mandate will not lie to control the discretion of the respondent court.

We cannot uphold respondent in these contentions. It is true that the judgment rendered by the trial court is an appealable one, but the remedy by appeal is not adequate inasmuch as the lien of appellant's execution would expire within eight months after the entry of that judgment, and it is improbable that the record on appeal could be perfected and the appeal disposed of within that time. (See *Vest* v. *Superior Court, supra,* at p. 96.) As respondent court did not have the power to adjudicate any question of title or to quash the execution, no question of its discretion in so doing is involved, and a writ commanding it to annul and vacate its judgment will not in any wise operate to control the court in the exercise of its discretion, nor will a writ compelling the court to either appoint the appraisers in accordance with petitioner's petition or to order a sale upon the execution levied and an application of the proceeds of the sale in the manner provided by law in any wise control the court in the exercise of its discretion; for it having found to be true all of the essential facts which it was incumbent upon the petitioner to allege and prove pursuant to the provisions of section 1246 and 1249 of the Civil Code, the respondent court had no discretion other than to either appoint appraisers or order a sale as heretofore indicated.

It is our opinion that although a writ of mandate compelling the court to vacate its judgment has some of the aspects of a writ of certiorari, it is nevertheless a proper writ under the circumstances of this case (*Andrews* v. *Superior Court,* 29 Cal.2d 208, 214-215 [174 P.2d 313]; *Vest* v. *Superior Court, supra*).

It is therefore ordered that a peremptory writ of mandate issue directing the respondent court to vacate the judgment filed in proceeding Number 640626 in the respondent court on

the 11th day of July, 1956, and further directing said court to make an order appointing appraisers as provided by law, to appraise the value of the premises described in the petition filed by petitioner herein for their appointment, to determine whether that property can be divided without material injury, and to take such further proceedings as are required by sections 1253, 1254, 1255, 1256, 1258, and 1259 of the Civil Code, or that in the alternative it order the sale of the subject property under the execution levied thereon on the 15th of March, 1956, and that the proceeds of said sale be applied in the manner required by law.

White, P. J., and Fourt, J., concurred.